FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

2018 APR 26  PM 1:05

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

Civil Action Number:

JUAN CARLOS GIL,

         Plaintiff,

2:18-CV-284-FtM-38CM

vs.

GULF COAST COMMERCIAL CORPORATION
d/b/a Inn on Fifth,

         Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Gulf Coast Commercial Corporation ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant's business.

2.     Hospitality businesses (such as Defendant) can make choices (unlike visually impaired individuals) and can either make their hotels and amenities offered therein inclusive, or they can make them effective **Zones of Discrimination**

3.     When hospitality business owners and operators do not take steps necessary to notice people of their hotel facility's limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.     This case arises out of the fact that Defendant has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business  so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's hotel location is not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

## JURISDICTION & VENUE

6.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

7.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, the Defendant's hotel is located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a Florida profit corporation.

8.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Juan Carlos Gil**

9.      Plaintiff Juan Carlos Gil is a resident of the state of Florida, resides within the Southern judicial district, is *sui juris*, and is disabled as defined by the ADA and Section 504 of the Rehabilitation Act.

10.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff suffers optic nerve damage and is legally blind. Plaintiff also suffers from cerebral palsy, is unable to walk, and is confined to a wheelchair.  Plaintiff is substantially limited in the major life activity of seeing.

11.     Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals.[1]

---

[1] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being  the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020);  See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm

12.     In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[2], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

**Gulf Coast Commercial Corporation**

13.     Defendant Gulf Coast Commercial Corporation is the owner and operator of a hotel under the name "Inn on Fifth."

14.     The Defendant owns and/or operates Inn on Fifth, a hotel in downtown Naples, Florida. Defendant's hotel is rated by Forbes as a 4-star & AAA Four Diamond The Inn's two iconic structures face each other on Fifth Avenue South, close to shopping, dining, tennis, golf and the beach. Inn on Fifth is home to 119 elegantly appointed guest rooms and suites, including 32 luxurious Club Level Suites in a separate private building. Defendant's hotel has a rooftop oasis pool, a full service spa, two award-winning restaurants, and a 24-hour fitness center. There are also options for guests to obtain personal concierge services, rooftop retreats, laundry services, on-site business center, and event space. The hotel also provides valet parking, transportation to the beach and downtown area, and daily newspapers.

## FACTS

15.     At all times material hereto, Defendant was (and is) an organization which owns and operates a luxury hotel under the brand name "Inn on Fifth," which is open to the public. As the owner and operator of the Inn on Fifth hotel, Defendant is defined as a

---

[2] July 2017

"Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A]n inn, hotel, motel, or other place of lodging," 42 U.S.C. §12181(7)(A) and 28 C.F.R. §36.104(2).

16.    The Inn on Fifth hotel is open to the public and is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(A) and 28 C.F.R. Part 36. The Inn on Fifth facilities are also referenced throughout as "Place(s) of Public Accommodation," "Inn on Fifth," "inn," or "hotel."

17.    Defendant's hotel also contains an award-wining modern American restaurant called Ocean Prime and a popular restaurant called Truluck's Seafood Steak and Crabhouse, each of which are each a place of public accommodation as defined as "[A] restaurant, bar, or other establishment serving food or drink," pursuant to 42 U.S.C. §12181(7)(B).

18.    Defendant's hotel contains a luxurious spa called Spa on Fifth, which is a place of public accommodation as defined as 42 U.S.C. §12181(7) (L).

19.    The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.innonfifth.com ("Website").

20.    Defendant's Website is offered by Defendant as a way for the public to obtain information on Inn on Fifth rooms, facilities, and other information the Defendant seeks to communicate to the public.

21.     Defendant's Website is an integral part of Defendant's hotel that is on-line, where the public can view Defendant's hotel facilities and also reserve Inn on Fifth rooms.  Therefore, the Website is itself a public lodging establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(A). As such, the Website must comply with all requirements of the ADA.

22.     Defendant's Website is an integral part of Defendant's restaurants that are on-line, where the public can view each restaurant's description, highlights, hours of operation, links to their personal websites[3], and their reservation phone number. Thus the Website is also a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7)(B).

23.     Defendant's Website is an integral part of Defendant's spa that is on-line[4], where the public can learn about spa services, download their spa menu and brochure, access spa specials, packages, and obtain the phone number for spa reservations, and in-room spa services. Thus the Website is also a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7)(L).

24.     For all of the reasons as delineated herein, clearly, the Website is an integral part of all of the goods and services offered to the public by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(A), (B) & (L) of the ADA[5].

---

[3] www.ocean-prime.com ; https://www.innonfifth.com/dining/ocean-prime/
[4] http://hotelescalante.com/amenities/services-and-amenities/
[5] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

25.     At all times material hereto, Defendant was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(A), (B) & (L) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the ADA.

26.     During the month of April, 2018, Plaintiff attempted on several occasions to communicate with the Defendant by calling Defendant's customer service number (available through Google search online) to inquire about Inn on Fifth room and amenities at the Inn on Fifth located at 699 5th Avenue South, Naples, Florida 34102 with the intent of renting a hotel room for a combination mini-vacation and business trip, and with the intent of also dining at Defendant's on-site restaurants and visiting the spa located at the hotel. However, Defendant's representative failed to fully assist Plaintiff and referred them to Defendant's Website for the requested information.

27.     Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

28.     Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites and the ability to access/comprehend electronic documents.

29.     When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

30. Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[6].

31. Furthermore, Defendant's Website does not have the sign of website accessibility[7].

32. Defendant's Website was inaccessible so Plaintiff could not (among other things):

    a. learn about the room types, rates, and additional amenities based upon room rate and to make a determination of renting a particular type of room;
    b. Learn about the hotel restaurants;
    c. Learn about the complimentary transportation services to the beach and surrounding businesses in the area;
    d. Learn if the hotel has a business service center for the convenience of hotel guests.

33. Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "PDF documents," "PDFs," or "electronic documents."

34. Blind and/or impaired persons require assistive devices (such as screen reader software) to read/comprehend content when it is provided in electronic document format.

35. Plaintiff has tried and has been unable to access and comprehend the

---

[6] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design." Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[7] 

Defendant's Website and the electronic documents located therein. By denying Plaintiff the opportunity to comprehend electronic documents due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff (and other blind and visually impaired individuals) the opportunity to participate in or benefit from the goods and services Defendant offers to the public (non-disabled persons and persons who are not visually impaired).

36.    Plaintiff's expectation of renting a hotel room using the hotel's online reservation system, dining in the hotel's on-site restaurant, and enjoying the hotel's many convenience amenities were destroyed since he could not access Defendant's Website at all to avail himself of the latest services which Defendant offers to the public.

37.    Since Plaintiff could not comprehend Defendant's Website, he was unable to learn about the dining options at Defendant's hotel (its on-site restaurants). Further Plaintiff was unable to learn about the range of spa services at the spa located at the hotel and was unable to patronize the spa as a result. Therefore, Plaintiff was precluded from patronizing the restaurants and spa within Defendant's hotel.

38.    Because Defendant maintains a website for its hotel which contains an online reservation system whereby potential patrons may reserve a hotel room. Therefore, the reservation system is subject to the requirements of ADA, 28 C.F.R.§ 36.302(e) and Plaintiff's inability to ascertain if the hotel had accommodations for his disability is violative of the ADA.

39.    Had Defendant's Website been accessible to Plaintiff, the reservation feature within Defendant's Website does not provide the public the ability to specify a handicapped accessible hotel room at the point of making a reservation and paying for a room, in further violation of the ADA.

40.    The fact that Plaintiff could not access Defendant's Website and the electronic documents contained therein left Plaintiff excluded from accessing the Inn on Fifth's goods and services and further left him with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as in this case mini-vacation and business travel) in a manner equal to that afforded to others who are not similarly disabled.

41.    Plaintiff's inability to communicate with/comprehend Defendant's Website and the electronic documents contained therein has impeded Plaintiff's access to Defendant's hotel and the amenities therein has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's Inn on Fifth facilities and to the goods and services offered by Defendant. Plaintiff's inability to fully use Defendant's Website and his inability to access Defendant's electronic documents has hindered, impeded and inhibited Plaintiff's access to Defendant's hotel location. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

42.    While the Plaintiff could certainly make arrangements for transportation of himself and his wheelchair to the Inn on Fifth located at 699 5th Avenue South, Naples Florida 34102, but without access to information on hotel room types, prices, accommodations for handicapped guests, and amenities (due to the Website's lack of accessibility), as a blind individual, he great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing because he lacks basic understanding of the "*who, what, and how*" to physically travel a Inn on Fifth facility of his choice.

43.    By denying Plaintiff the opportunity to comprehend documents and Website due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the

opportunity to participate in, or benefit from, the goods and services Defendant offers to the public (non-disabled persons and persons who are not visually impaired).

44.    Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with Defendant in order to obtain access to Defendant's physical hotel location in order to participate in the goods and services Defendant offers to the public. Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

45.    On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its electronic documents and Website.

46.    On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

47.    On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website and the electronic documents therein, accessible to the visually impaired community.

48.    Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its Inn on Fifth facilities.

49.    All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

50.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website and electronic documents which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

51.     Defendant and alike hospitality facilities are fully aware of need to provide full access to all visitors to its Website.[8]

52.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

53.     According to the National Federation for the Blind[9], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[10].

54.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.  No price can be put on Plaintiff's inability to shop for himself.

55.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

[8] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
(www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )
[9] See  https://nfb.org/blindness-statistics
[10] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

56.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

57.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-56 above.

### Requirement for Effective Communication

58.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

59.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

60.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

61.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis

13

of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

62.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

63.     By virtue of the fact that Defendant's Inn on Fifth is open to the public, its hotel is place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(A).

64.     Further, by virtue of the fact that Defendant's Inn on Fifth contains two restaurants and a spa which are open to the public, its hotel is place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §§s 12181(7)(B) & (L).

65.     The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

66.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the amenities, accommodations, and goods and services offered and ability to investigate and choose a hotel, the visually impaired have no access to the amenities, accommodations, goods and services of that hotel, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

67.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the

14

ADA to websites of public accommodations[11]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

68.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

69.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

---

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

70.     The Website serves as an integral part of Defendant's Inn on Fifth by providing the public information on the location of the Inn on Fifth, and offers the public the ability to reserve a room at the Inn on Fifth. The Website also provides the public the ability to access the descriptions of the on-site restaurants, the extensive spa menu of services, and learn about the other amenities provided by the hotel, such as transportation service to/from various local locations. These features of the Website provide the public the ability to determine if they wish to physically patronize the Defendant's physical hotel location. This nexus causes the Website to be subject to the ADA under 42 U.S.C. §§s 12181(7)(A), (B) & (L).

71.     In addition, Defendant's representatives within its hotel location have referred customers to Defendant's Website for additional information, as the Website provides information regarding hotel reservations, room and restaurant descriptions, spa menu selections, and other hotel amenities, such that the Website is an integral part of the public's needs with respect to Defendant's business, and nexus to the hotel as a *Place of Public Accommodation* is clearly established.

72.     As delineated above and pursuant to 42 U.S.C. §§s 12181(7)(A), (B) & (L), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.innonfifth.com website, as defined within §§s 12181(7)(A), (B) & (L). On this basis, Defendant is subject to the ADA.

73.     By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on amenities, accommodations, and goods and services instead of providing such information at the physical hotel location, the Website has been rendered an integral part of Defendant's physical business

16

location. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business location.

74.     It is clear that the ADA applies to the Defendant's Website, as the Website is a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

75.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . *should keep pace with the rapidly changing technology of the times.*" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[12] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc.,* 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[13] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where

---

[12] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[13] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

expanding technology would be subject to the ADA. *Scribd*, 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

76.     Recent case law supports that the intangible barriers presented within Defendant's Website and electronic documents therein are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[14], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as **"intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

77.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services.  Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

78.     Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites and electronic documents therein so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest

---

[14] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

79.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

80.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

81.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

82.     Furthermore, on March 15, 2012, new regulations implementing Title III

of the ADA took effect, imposing significant new obligations on inns, motels, hotels and

other "places of lodging". 28 C.F.R. §36.302(e) states:

> "(1) *Reservations made by places of lodging.* A public accommodation that owns,
> leases (or leases to), or operates a place of lodging shall, with respect to
> reservations made by any means, including by telephone, in-person, or through a
> third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with
> disabilities can make reservations for accessible guest rooms during the same
> hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered
> through its reservations service in enough detail to reasonably permit individuals
> with disabilities to assess independently whether a given hotel or guest room
> meets his or her accessibility needs;[15]
> (iii) Ensure that accessible guest rooms are held for use by individuals with
> disabilities until all other guest rooms of that type have been rented and the
> accessible room requested is the only remaining room of that type;
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest
> rooms and ensure that the guest rooms requested are blocked and removed from
> all reservations systems; and
> (v) Guarantee that the specific accessible guest room reserved through its
> reservations service is held for the reserving customer, regardless of whether a
> specific room is held in response to reservations made by others."

**Barriers to Access**

83.     As a result of the inaccessibility of Defendant's Website and failure of the

electronic documents contained therein to be accessible to visually impaired individuals,

those individuals are denied full and equal access to the Inn on Fifth physical location as

---

[15] The United States Department of Justice, in "28 C.F.R. Appendix A to Part 36, Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities", provides a section-by-section analysis of 28 C.F.R. §36.302(e)(l). In its analysis and guidance, the Department of Justice's official comments state that "information about the Hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards." An agency's interpretation of its own regulations, such as the Department of Justice's interpretation of 28 C.F.R. §36.302(e)(1), must be given "substantial deference" and "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504,512, 114S.Ct. 2381, 129 L.Ed.2d 405 (1994).

Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

84.     Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ("DEs") that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

85.     A sampling review of Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.
4) Alternative text is likely insufficient or contains extraneous information,
5) An event handler is present that may not be accessible,
6) A heading level is skipped,
7) Flash content is present,
8) Adjacent links go to the same URL,
9) A link contains no text, and
10) Alternative text is likely insufficient or contains extraneous information.

86.     Further, the Website does not offer include the universal symbol for the disabled[16] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

---

[16]  ™ , or HTML "Accessibility" link for those individuals who are visually impaired

21

87.   There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website and electronic documents contained therein accessible which would not fundamentally alter the nature of Defendant's business or result in an undue burden to the Defendant.

**Electronic documents**

88.   In order to meaningfully access electronic documents, blind and visually impaired individuals require that electronic documents be saved in an accessible format. Much of the content provided in electronic document format within Defendant's Website is not accessible for persons with screen readers.

89.   Defendant's website contains one or more links to electronic document (PDF) attachments.   An example of such links include:

a) menu selections for the on-site spa (Spa on Fifth)[17];
b) the spa brochure[18];
c) news articles concerning Inn on Fifth's renovations[19], and regarding the Inn of Fifth's $15 million expansion[20];
d) a guide to planning weddings at Inn on Fifth[21].

90.   Each electronic document consists of a flat surface which does not contain accessible coding. The electronic documents do not include a text-based format (or equivalent). Defendant has not added 'alt[22]' tags or long descriptions for the electronic documents within its Website. The electronic documents have not been provided in

---

[17] located at https://www.innonfifth.com/wp-content/uploads/2016/04/2016-SPAmenu.pdf
[18] located at https://www.innonfifth.com/wp-content/uploads/2016/04/2016-SPA-Brochure.pdf
[19] https://www.innonfifth.com/wp-content/uploads/2015/12/Renovations-Underway_Final.pdf
[20] (http://webcache.googleusercontent.com/search?q=cache:YxGsrecsIgwJ:www.innonfifth.com/wp-content/uploads/2013/03/Expansion_2011.pdf+&cd=3&hl=en&ct=clnk&gl=us&client=firefox-b-1-ab)
[21] (https://www.innonfifth.com/wp-content/uploads/2015/04/wedding-kit.pdf)
[22] 'alt' refers to 'alternative text'

HTML or with a text equivalent, and is not a webpage[23], therefore, it is inaccessible to the visually impaired.

91.    Providing electronic documents in a format that can be recognized by screen reader software and therefore making those electronic documents accessible to the visually impaired would not result in any undue burden to Defendant and would not fundamentally change the nature of Defendant's products and services.

92.    The failure of Defendant's electronic documents to be accessible impedes Plaintiff (and other similarly situated visually impaired individuals) from fully accessing the services, goods, and accommodations provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

93.    The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's electronic documents and Website. These violations are ongoing.

94.    As a result of the inadequate development and administration of Defendant's electronic documents and Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

95.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

---

[23] (which is an internet document usually in HTML)

a) Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.innonfifth.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.innonfifth.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made,

c) Require Defendant to accommodate disabled individuals through its reservation process pursuant to 28 C.F.R. §36.302(e), and

d) Require Defendant to provide access to its physical hotel location by providing the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of obtaining access to Defendant's physical hotel location such as: of viewing and locating the Inn on Fifth (location), making reservations for renting a room at Inn on Fifth, viewing menu selections for spa services at the Spa on Fifth within Defendant's hotel, viewing restaurant descriptions of two on-site restaurants, and of viewing electronic documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an

alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through Defendant's Website and through Defendant's physical hotel location.

96.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Gulf Coast Commercial Corporation.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Gulf Coast Commercial Corporation and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.innonfifth.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA, such that they are then not impeded from accessing Defendant's physical hotel location and the amenities located therein;

c) Pursuant to 28 C.F.R. §36.302(e), the Court enter an Order for permanent injunction which directs Defendant to modify its policies, practices, and/or procedures to ensure that individuals with disabilities can make

reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

d) The Court enter an Order requiring Defendant to update all electronic documents made available to the public to remove barriers in order that individuals with visual disabilities can access the electronic documents to effectively communicate with Defendant to the full extent required by Title III of the ADA;

e) Pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), the Court enter an Order for permanent injunction which directs Defendant to take all steps necessary so Defendant's electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

f) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[24] and sign of website accessibility[25] (standard WCAG 2.0) within its Website. Such a clear display is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.innonfifth.com website;

---

24 

25 

g) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

h) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

i) The Court require Defendant engage a (mutually agreed upon) Consultant who shall assist it in improving the accessibility of its electronic documents so they are accessible to individuals with visual disabilities and to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents continue to be accessible to individuals with visual disabilities;

j) The Court enter an Order directing Defendants to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

k) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

l) The Court award damages in an amount to be determined at trial;

m) The Court to award Plaintiff reasonable litigation expenses and attorneys'

    fees; and

n) That the Court award such other and further relief as it deems necessary,

    just and proper.

Dated this 19th day of April, 2018.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_